# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VILMA REYES and PATRICIA MARTINEZ, on behalf of themselves and all other employees similarly situated,<br><br>         Plaintiffs,<br><br>     v.<br><br>SJ SERVICES, INC., SHAWN SHEA and DAVID SHEA,<br><br>         Defendants. | CIVIL ACTION No. 1:12-cv-11715-DPW |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants SJ Services, Inc. ("SJ"), Shawn Shea and David Shea (together, "Defendants") submit this Memorandum of Law in support of their Motion to Dismiss all counts of the complaint ("Complaint") filed by Vilma Reyes and Patricia Martinez (together, "Plaintiffs").

The Court should dismiss Plaintiffs' Complaint because all of Plaintiffs' claims are completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The LMRA preempts any claim arising under state law that would require a court to interpret the provisions of a collective bargaining agreement ("CBA"), a task that is entrusted to private arbitration as a matter of federal labor policy. In this case, the resolution of each of Plaintiffs' claims requires an interpretation of the CBA that governed the employment relationship between Plaintiffs and SJ. An adjudication of Plaintiffs' common law breach of contract claim would require the Court to interpret the CBA because the contract that Plaintiffs claim Defendants breached is the CBA. Plaintiffs' claim under the Massachusetts Payment of Wages Act, Mass. Gen. Laws ch. 149, §§ 148, 150 ("Wage Act") is also preempted by the

LMRA.  Plaintiffs' assertion that Defendants violated the Wage Act by failing to pay wages and benefits owed to them and putative class members would require the Court to interpret the CBA's provisions governing wages and benefit eligibility, in order to determine the specific wages and benefits to which Plaintiffs and putative class members were entitled (if any). Likewise, Plaintiffs' *quantum meruit* and unjust enrichment claims would require an interpretation of the CBA because these claims rest at bottom on the same notion: that Plaintiffs and those they seek to represent have not been paid the wages or benefits they are owed – the resolution of which clearly depends on what the CBA actually provides.

Moreover, and to the extent that Plaintiffs' common law claims for breach of contract, *quantum meruit* and unjust enrichment are based upon contracts other than the CBA, the claims are preempted under the Supreme Court's decision in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959), because they involve wages, hours and benefits – all of which are mandatory subjects of bargaining under the National Labor Relations Act ("NLRA").[1]

## Background

### I.  SJ SERVICES, INC.

SJ provides janitorial cleaning services for companies and organizations located within the Commonwealth.  Complaint ("Compl."), ¶¶ 1, 15-16.  Plaintiffs are current SJ employees who hold the position of cleaner in Massachusetts.  Compl., ¶¶ 13-14.  In addition, Plaintiffs and members of the putative class they seek to represent are members of bargaining units whose terms and conditions of employment are governed by a CBA between SJ and the Service

---

[1] Although Defendants have limited their arguments in the instant motion to the legal doctrines of Section 301 and *Garmon* preemption, there are a number of additional legal deficiencies in Plaintiffs' Complaint.  For example, the Complaint contains no factual allegations specific enough to meet the rigors of the standards articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and Plaintiffs' statutory claims preempt their common law claims.  For purposes of judicial economy and efficiency, Defendants have presented only their arguments in favor of Section 301 and *Garmon* preemption, as these arguments are plainly dispositive of the entire case.

Employees International Union Local 615 ("SEIU Local 615").[2]  Affidavit of David Shea ("Shea Aff."), ¶¶ 3-7, Exs. 1-4 (attached as Exhibit A).

## II.  COLLECTIVE BARGAINING AGREEMENT

The CBA between SJ and SEIU Local 615 contains comprehensive provisions governing wage schedules, overtime pay, holiday pay, vacation pay, sick pay, bereavement pay, pay for employees serving jury duty, pay for travel time and travel expenses, pay for employees who transfer from one job classification, wage category and/or benefits eligibility category to another, work schedules, changes in assignments, and workloads, and group insurance benefits.[3]  Each of these provisions is significant to this case because, in tandem, they prescribe the wages and benefits to which Plaintiffs and putative class members were entitled – the same wages and benefits they now claim they were denied.  Put simply, Plaintiffs cannot litigate their claims without calling on the Court to parse these pay and benefits provisions of the CBA.

## III.  THE COMPLAINT

On or about July 19, 2012, Plaintiffs filed a four-count complaint in Suffolk Superior Court.  In their Complaint, Plaintiffs purport to assert on their own behalf and on behalf of a putative class of similarly situated employees that Defendants "promised to compensate [them] for all hours worked and to provide [them] with certain health benefits" but did not do so.

---

[2] The CBA is properly before the Court on this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *See, e.g.,* *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (court may consider evidence extrinsic to the pleadings in determining subject-matter jurisdiction).  It also is properly before the Court on this Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6), as it was referenced by Plaintiffs in support of their breach of contract claim.  Compl. ¶ 61 ("Defendant entered into an unambiguous and enforceable contract, whether express or implied, that requires Defendant to pay Plaintiffs and the Class Members an hourly wage for each hour worked and to provide health insurance.")  *See, e.g., Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).")

[3] The CBA between SEIU Local 615 and SJ is attached as Exhibit 4 to the Affidavit of David Shea, ¶ 7.  Citations to the specific sections of the CBA implicated by Plaintiffs' claims in this matter are included in footnotes 7 through 16, *infra*.

Compl., ¶¶ 18, 31, 34, 44-45.  Plaintiffs allege that Defendants failed to pay them for all hours they worked, including pre- and post-shift work time, failed to pay them the "full amount of wages to which they were entitled," and failed to provide them certain health benefits and/or health insurance.  Compl., ¶¶ 30-31, 34, 37, 44-45, 58, 64-65, 71.  Based on these allegations, Plaintiffs claim that Defendants violated the Wage Act (Count I).  Plaintiffs also assert common law claims for breach of contract (Count II), *quantum meruit* (Count III), and unjust enrichment (Count IV).[4]

SJ removed this action to this Court on September 14, 2012, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, based on the complete preemption corollary to the well-pleaded complaint rule, as Plaintiffs' claims are preempted by § 301 of the LMRA.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-94 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

## Argument

### I.  LEGAL STANDARD FOR MOTION TO DISMISS.

A court must dismiss a complaint where a plaintiff's factual allegations, accepted as true, are insufficient to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The plaintiff "must plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Moreover, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

Likewise, a court must dismiss a complaint where it is apparent from the face of the complaint that the court lacks subject-matter jurisdiction to hear the case.  Fed. R. Civ. P.

---

[4] Plaintiffs' claim for unjust enrichment is erroneously labeled as "Count VI" in the Complaint.  *See* Compl., p. 7.  In addition, Count III of the Complaint is labeled "*quantum meruit*/unjust enrichment."  In order to avoid confusion with the unjust enrichment claim asserted in Count IV, Defendants refer to Count III in this motion simply as "*quantum meruit.*"

12(b)(1); *see Vizqueira v. First Bank*, 140 F.3d 12, 18 (1st Cir. 1998).  In determining

whether it is vested with jurisdiction, a court may look beyond the pleadings to outside

materials without converting the motion to one for summary judgment.  *Gonzalez*, 284 F.3d

at 288.

      Because all of Plaintiffs' claims are preempted by federal labor law, subject-matter

jurisdiction vests exclusively with the National Labor Relations Board ("NLRB") and

Plaintiffs' Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LABOR LAW.

      Plaintiffs and members of the putative class they seek to represent are unionized.  Shea

Aff., ¶¶ 3-7, Exs. 1-4.  These unionized employees are subject to a collective bargaining

agreement, which contains detailed provisions governing wage schedules, overtime pay, holiday

pay, vacation pay, sick pay, bereavement pay, pay for employees serving jury duty, pay for travel

time and travel expenses, pay for employees who transfer from one job classification, wage

category and/or benefits eligibility category to another, work schedules, changes in assignments,

and workloads, and group insurance benefits.

      With very few exceptions, state law plays no role in resolving disputes arising out of

unionized, private employment settings.  Comprehensive federal statutes dominate the labor law

landscape.  The NLRA, 29 U.S.C. §§ 141, *et seq.*, grants employees the right to join unions,

governs representation elections, mandates good faith collective bargaining once a union has

been elected, creates administrative procedures to investigate and resolve labor disputes, and

delegates the investigation and resolution of labor disputes to the NLRB.  Section 301 of the

LMRA, 29 U.S.C. § 185(a), gives federal courts jurisdiction to resolve disputes arising out of

contracts reached by unions and employers in the NLRA bargaining process after any private

dispute resolution mechanism between the parties has run its course.  It is these two federal statutes, not Massachusetts law, on which the instant case turns.

Courts have recognized two separate doctrines of federal preemption that bar state law claims asserted on behalf of unionized employees.  "Section 301 preemption" preserves the federal character of labor agreements, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957), by rejecting state law claims that turn on the interpretation of those agreements.  *Garmon* preemption preserves the exclusive province of the NLRB to adjudicate violations of the NLRA by forbidding courts from hearing claims involving conduct that the NLRA even "arguably" prohibits.  *Garmon*, 359 U.S. 236.  Each of these forms of preemption independently serves to bar the claims in Plaintiffs' Complaint.

**A.    Section 301 Preempts Plaintiffs' Claims.**

Where the resolution of a state law claim substantially depends on an analysis of the terms of a collective bargaining agreement, that claim must be brought, if at all, under Section 301 of the LMRA.  Further, a state law claim requiring interpretation of a collective bargaining agreement that asserts any cause of action other than a contract claim under Section 301 is preempted and must be dismissed.[5]  *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 559-61 (1968); *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997) (Section 301 preempts claim "if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining

---

[5] The preemption doctrine was developed to avoid differing interpretations of the parties' rights and obligations. *See Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962).  As the Supreme Court explained in *Lingle v. Norge Div. of Magic Chef, Inc.*:

> If the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute.

486 U.S. 399, 405-06 (1988).  Indeed, "[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts."  *Caterpillar*, 482 U.S. at 394.

agreement" or "if its resolution arguably hinges upon an interpretation of the collective

bargaining agreement") (internal quotations omitted).  Plaintiffs' claims in this case depend on

an interpretation and application of the CBA between SJ and SEIU Local 615, and those claims

cannot survive here.

Plaintiffs' state law statutory wage and benefit claims necessitate an interpretation of the

CBA to (1) determine how employees should be paid for the hours that they allegedly worked

under the various provisions governing scheduling and pay in the CBA; and (2) determine

whether employees were eligible for certain health benefits under the provisions governing

benefit eligibility in the CBA.  The First Circuit's *Adames v. Executive Airlines, Inc.* is

controlling.  There, a flight attendant argued that her employer violated Puerto Rico wage and

hour law because it did not pay her for all hours worked.  The court held that her claims were

preempted by the Railway Labor Act[6] because it was impossible to determine whether the

plaintiff was paid for all hours worked without interpreting the collective bargaining agreement

at issue.  The court would first need to interpret the agreement to determine how many hours the

employee "worked," and then determine both base and hourly pay in order to adjudicate any

damages.  258 F.3d 7, 13 (1st Cir. 2001).  Courts have applied the same reasoning to dismiss

Massachusetts statutory wage claims as preempted.  *See Mitchell v. Globe Newspaper Co., Inc.*,

602 F. Supp. 2d 258, 262 (D. Mass. 2009) (claim under Mass. Gen. Laws ch. 149, § 148

preempted by § 301); *see also Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 7-8 (1st

Cir. 2012) (affirming exercise of federal jurisdiction over wage claims under Mass. Gen. Laws

ch. 149, § 148 because of preemption under § 301) (citing *Adames*, 258 F.3d at 13).

---

[6] Although *Adames* was decided under the Railway Labor Act, the same analysis is applicable to preemption under Section 301 of the LMRA.  *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263 (1994); *Adames*, 258 F.3d at 12, n.3.

Plaintiffs' state law wage and benefit claims here are similar to the preempted claims in *Adames*, *Mitchell* and *Cavallaro*. To assess Plaintiffs' statutory claim that SJ failed to pay wages and benefits owed to them and other similarly situated employees in violation of the Massachusetts Wage Act, the Court would have to interpret the CBA's provisions governing wages and health benefits. Indeed, the rate at which SJ employees are paid is governed by a welter of CBA provisions dealing with wage schedules (that vary based on geographic locations and types of work),[7] overtime pay,[8] holiday pay,[9] vacation pay,[10] sick pay,[11] bereavement pay,[12] pay for employees serving jury duty,[13] pay for travel time and travel expenses,[14] and pay for employees who transfer from one job classification, wage category and/or benefits eligibility category to another.[15] The health benefits paid to employees are governed by the CBA provisions dealing with group insurance benefits (which vary depending on, *inter alia*, employee "category," as defined in another provision the CBA, full-time or part-time status and work location).[16]

Only after digesting the menu of pay provisions can the Court understand how many hours each employee actually worked (as contrasted with how many hours employees were paid for), and then determine whether SJ did or did not pay each employee for all hours worked. To see why, the Court need only consider an example of an employee who served jury duty for two

---

[7] *See* CBA, Art. 7, Sections 7.1-7.2.

[8] *See id.*, Art. 8, Section 8.1.

[9] *See id.*, Art. 9, Section 9.1-9.8.

[10] *See id.*, Art. 10, Section 10.1-10.5.

[11] *See id.*, Art. 11, Section 11.1.

[12] *See id.*, Art. 12, Section 12.1.

[13] *See id.*, Art. 14, Sections 14.1-14.2.

[14] *See id.*, Art. 17, Section 17.1.-17.2.

[15] *See id.*, Art. 26, Section 26.1-26.2.

[16] *See id.*, Art. 15, Section 15.1-15.3.

full weeks and, upon his return, was transferred to a new job classification and required to travel from SJ's offices to his work location.  In such a case, a CBA interpreter (commonly called an "arbitrator") would have to figure out how many hours the employee "worked," and at what rate he was entitled to be paid.  The same is true with respect to a determination of whether SJ did or did not provide each employee with the appropriate health insurance benefits.  An arbitrator would have to figure out the employee category to which an employee belonged and whether the employee's benefits were affected by the location at which the employee worked.  The only way one could determine these questions would be to sit not as an Article III judge but as a CBA arbitrator.

Plaintiffs' common law claims also would require interpretation of the CBA that covers Plaintiffs and members of the putative class they seek to represent.  Plaintiffs' breach of contract claim would require the Court to interpret the CBA because the contract Plaintiffs claim SJ breached is the CBA.[17]  *See Manning v. Boston Med. Ctr. Corp.*, No. 09-11724-RWZ, 2011 WL 864798, at *2 (D. Mass. Mar. 10, 2011) (breach of contract claims alleging breach of a collective bargaining agreement were preempted by § 301, as they were "expressly founded on rights created by" that agreement).

Likewise, the resolution of Plaintiffs' *quantum meruit* and unjust enrichment claims would require analysis of the CBA because these claims rest at bottom on the notion that Plaintiffs have not been paid the wages they are owed.  Claims for unjust enrichment and *quantum meruit* are analogous, and apply where "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other."  *Salamon v. Terra*, 394 Mass. 875, 859 (1985).  Recovery on either theory requires proof that a plaintiff conferred a measurable

---

[17] As discussed below, to the extent that Plaintiffs purport to assert claims based on something other than the CBA, those claims are subject to *Garmon* preemption.

benefit upon a defendant, and that the defendant accepted the benefit amid circumstances in which a reasonable person would have expected to compensate the plaintiff. *Id.*; *Bolen v. Paragon Plastics, Inc.*, 747 F. Supp. 103, 106-07 (D. Mass. 1990).[18]  As such, any analysis of the viability of these claims depends importantly on what wages and benefits the CBA provides. *See Manning*, 2011 WL 864798, at *2 (claim of *quantum meruit* that "assert[ed] a failure to pay wages due for work performed" was preempted by §301); *DiGiantommaso v. Globe Newspaper Co., Inc.*, 632 F. Supp. 2d 85, 89-90 (D. Mass. 2009) (unjust enrichment claim based on failure to pay wages for time worked during breaks preempted by § 301); *Hayes v. Aramark Sports, LLC*, No. 08-10700-RWZ (D. Mass. Mar. 30, 2009) (claims for violations of Mass. Gen. Laws ch. 149, § 148, *quantum meruit*/unjust enrichment, and breach of contract preempted by § 301). Moreover, these claims rely on the notion of a promise or implied contract.  It is black-letter law that a court will not imply a contract where there is an express contract covering the same subject. *See, e.g.*, *Boswell v. Zeyphyr Lines Inc.*, 414 Mass. 241, 250 (1993); *York v. Zurich Scudder Invs., Inc.*, 66 Mass. App. Ct. 610, 620 (2006).  Thus, the Court here cannot determine whether there is an express contract covering the same subject matter as any alleged implied contract without interpreting the CBA.

Each of Plaintiffs' state law claims would require the Court to engage in an analysis of the wage and benefit provisions of the CBA that set the terms and conditions of employment for members of the putative classes that Plaintiffs purport to represent.  Those claims are preempted by § 301 and must be dismissed.

---

[18] Massachusetts courts often treat *quantum meruit* as synonymous with a cause of action for implied contract.  *See, e.g.*, *Salamon*, 394 Mass. at 859 (using terms quasi-contract, contract implied in law, and *quantum meruit* interchangeably to represent cause of action for "an obligation created by law for reasons of justice") (quotations omitted).

**B.   *Garmon* Preemption Requires Dismissal of Plaintiffs' Claims.**

To the extent that Plaintiffs contend that their claims are based on contracts other than the

CBA, those claims are subject to *Garmon* preemption.  The *Garmon* rule states that "when an

activity is arguably subject to § 7 or § 8 of the National Labor Relations Act, the states as well as

the federal courts must defer to the exclusive competence of the NLRB if the danger of state

interference with national labor policy is to be averted."  *Chaulk Servs., Inc. v. Mass. Comm'n

Against Discrimination*, 70 F.3d 1361, 1364 (1st Cir. 1995).

An employer may not "refuse to bargain collectively with the representatives of his

employees" regarding mandatory subjects of bargaining.  29 U.S.C. § 158(a)(5); *see NLRB v.

Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 344 n.1 (1958).  Wages, hours, and benefits

are all mandatory subjects of bargaining.  *See* 29 U.S.C. § 158(d) ("to bargain collectively is . . .

to meet at reasonable times and confer in good faith with respect to wages, hours, and other

terms and conditions of employment").  An employer may not negotiate individual contracts

with employees governing wages, hours, and benefits – mandatory subjects of bargaining –

without union consent.  *See Brown v. Pro Football, Inc.*, 50 F.3d 1041, 1044-45 (D.C. Cir. 1995)

("employers are positively prohibited from seeking to bargain with individual employees, absent

consent from the union"); *Wood v. Nat'l Basketball Ass'n*, 809 F.2d 954, 959 (2d Cir. 1987)

("Once an exclusive representative has been selected, the individual employee is forbidden by

federal law from negotiating directly with the employer absent the representative's consent.")

Thus, if this Court were called upon to conclude the existence of and enforce such

individual agreements, it would permit what the NLRA forbids.  Each of the non-statutory claims

in Plaintiffs' Complaint are premised on the assertion that SJ promised to pay them for all hours

worked or promised to provide them certain health benefits and then did not do so.  Bypassing an

employee's union to directly deal with the employee on the subject of wages, benefits and hours

is an unfair labor practice and makes such individual agreements unenforceable.  *See J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944) ("[i]ndividual contracts no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining"). Because it is the NLRB – and not this Court – that has "the exclusive power to decide whether unfair labor practices have been committed and to determine the action the employer must take to remove or avoid the consequences of his unfair labor practice," *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 365 (1940), *Garmon* preemption bars Plaintiffs' claims and those asserted on behalf of SJ's unionized employees.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety.

Respectfully submitted,

SJ SERVICES INC., SHAWN SHEA and DAVID SHEA

By their attorneys,

  /s/ Barry J. Miller
Richard L. Alfred (BBO #015000)
Barry J. Miller (BBO # 661596)
Jessica M. Schauer (BBO #669677)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800

Dated:  September 21, 2012

CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2012, this document was filed through the Court's ECF system and that Plaintiffs' counsel includes registered users designated to receive Notices of Electronic Filings in this matter.

<u>      /s/ Barry J. Miller      </u>
Barry J. Miller