## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

VILMA REYES and PATRICIA MARTINEZ,<br>
on behalf of themselves and all other<br>
employees similarly situated,

<br>Plaintiffs,

<br>v.

<br>SJ SERVICES, INC., SHAWN SHEA and<br>
DAVID SHEA,

<br>Defendants.

</td>
<td>

CIVIL ACTION No. 1:12-cv-11715-DPW

</td></tr>
</table>

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' CROSS MOTION
## FOR LEAVE TO AMEND THE COMPLAINT

Defendants SJ Services, Inc. ("SJ"), Shawn Shea and David Shea (together, "Defendants") hereby oppose Plaintiffs' Cross-Motion for Leave to Amend the Complaint (docket no. 11) on the grounds that Plaintiffs' proposed amendment is futile and makes no effort to cure the fatal defects in the Complaint identified in Defendants' pending Motion to Dismiss (docket no. 9).   On September 21, 2012, Defendants moved to dismiss Plaintiffs' original Complaint because all of Plaintiffs' claims are completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).   In response, rather than addressing Defendants' arguments regarding the preemption of their claims, Plaintiffs filed a cross-motion for leave to file a First Amended Complaint.   The proposed First Amended Complaint asserts statutory wage claims on behalf of a putative class of unionized employees that are substantively identical to the wage claims in Plaintiffs' original Complaint.   Plaintiffs have done nothing to modify these claims in any material way or to otherwise to avoid the preemptive force of Section 301.   Instead, they cursorily assert that the claims simply are not preempted, offer a guess at why Defendants might disagree with that assertion, and make a

conditional request for leave to file a more substantive brief on the preemption issue should the Court deny them leave to amend.  In addition to being procedurally improper, Plaintiffs' attempt to circumvent Defendants' pending Motion to Dismiss ignores the substantive law.  There is no question that the wage claims asserted on behalf of unionized employees in the proposed First Amended Complaint, like the wage claims in the original Complaint, are preempted by Section 301 of the LMRA.  The LMRA preempts any claim arising under state law that would require a court to interpret the provisions of a collective bargaining agreement ("CBA"), a task that is entrusted to private arbitration as a matter of federal labor policy.  Whether analyzed in the context of Plaintiffs' original Complaint or the proposed First Amended Compliant, the unionized employees' claims are preempted because they are premised upon an assertion that Defendants failed to pay wages owed to them – which requires the Court to interpret the CBA's provisions governing wages, in order to determine the compensation to which Plaintiffs and putative class members were entitled (if any).

Plaintiffs' proposed First Amended Complaint also is futile because the new claims that it seeks to assert on behalf of a putative class of non-unionized employees would not survive a motion to dismiss.  First, Plaintiffs' proposed claim for allegedly unpaid health benefits cannot survive because Plaintiffs provide no factual allegations or legal analysis to substantiate a plausible claim that non-unionized employees of SJ have any entitlement to such benefits.  Second, in support of a claim for unpaid wages on behalf of the non-unionized employees, the proposed First Amended Complaint offers only a string of conclusory legal and factual assertions, which are not entitled to any presumption of truth and fail plausibly to suggest that the non-union plaintiff or any putative class member performed work for which they were not

compensated as required to meet the pleading standard set forth in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).

Plaintiffs' proposal to amend their Complaint cannot avoid the inevitable dismissal of claims that are plainly preempted by federal labor law. Plaintiffs' effort to delay that outcome by resort to procedural maneuvering serves only to squander judicial and private resources. The Court should not indulge this gambit. Instead, the Court should promote the timely disposition of this action by denying Plaintiffs' Cross Motion For Leave to Amend the Complaint and dismissing Plaintiffs' claims on the grounds set forth in Defendants' Motion to Dismiss (docket nos. 9-10).

**BACKGROUND**

## I.  PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Vilma Reyes and Patricia Martinez filed their original Complaint in Suffolk Superior Court on July 19, 2012, asserting four causes of action on behalf of themselves and others similarly situated, each of which derived from Defendants' alleged failure to pay Plaintiffs and putative class members for all hours worked and/or from Defendants' alleged failure to provide Plaintiffs and putative class members with certain health benefits. *See* Complaint ("Compl."), (docket no. 1-2), ¶¶ 30-31, 34, 37, 42, 44-45, 58, 64-65, 71. Specifically, Plaintiffs asserted a claim under the Massachusetts Payment of Wages Act, Mass. Gen. Laws ch. 149, §§ 148, 150 ("Wage Act") and common law claims for breach of contract, *quantum meruit*, and unjust enrichment. *See id.*, Counts I-IV.[1] On September 14, 2012, Defendants removed the action to this Court based on the complete preemption corollary to the well-pleaded complaint

---

[1] Count III of the original Complaint was labeled "Quantum Meruit/Unjust Enrichment." In order to avoid confusion with the unjust enrichment claim asserted in Count IV (erroneously labeled Count VI in the Complaint), Defendants refer to Count III simply as "*quantum meruit*."

rule, as Plaintiffs' claims are preempted by Section 301 of the LMRA. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-94 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

On the same day that they removed the case to this Court, counsel for Defendants sent an e-mail message to counsel for Plaintiffs, noting that the claims asserted in the Complaint were plainly preempted and apprising Plaintiffs' counsel that Defendants intended to file a motion to dismiss. A copy of Defendants' counsel's e-mail message is attached as Exhibit 1. Plaintiffs' counsel did not respond to that correspondence.

On September 21, 2012, Defendants moved to dismiss Plaintiffs' original Complaint in its entirety on grounds of preemption. In their motion, Defendants noted that the resolution of each of Plaintiffs' claims for wages and benefits required an interpretation of the CBA that governed the employment relationship between Plaintiffs and SJ and, as such, those claims were preempted by Section 301 of the LMRA. Defendants also noted that, to the extent that Plaintiffs' common law claims were based upon some contract other than the CBA, those claims were preempted by the doctrine announced in the Supreme Court's decision in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959), because they involved wages, hours and benefits – all of which are mandatory subjects of bargaining under the NLRA. *See* docket nos. 9-10.

## II.   PLAINTIFFS' PROPOSED FIRST AMENDED COMPLAINT

On October 2, 2012, Plaintiffs' counsel wrote to Defendants' counsel and requested that Defendants agree to remand the case to state court. Plaintiffs' counsel asserted that Defendants had removed the case to federal court before Plaintiffs were ready to proceed with the case in earnest, and Plaintiffs had intended to amend the Complaint before effecting service of process and beginning to prosecute the action. A copy of Plaintiffs' counsel's correspondence in this

regard is attached as Exhibit 2.  Defendants' counsel responded by noting that Plaintiffs' analysis of the procedural rules regarding removal and service of process was incorrect.  Defendants' counsel further noted that Plaintiffs had not identified any proposed amendment to the Complaint that would deprive the federal court of subject matter jurisdiction, and hence there was no basis of an agreement to remand the case to state court.  Defendants' counsel's correspondence in this regard is attached as Exhibit 3.

On October 5, 2012, Plaintiffs filed a "Cross Motion for Leave to Amend the Complaint and Opposition to Defendants' Motion to Dismiss the Complaint" pursuant to Fed. R. Civ. P. 15(a)(2), to which they attached a proposed First Amended Complaint.  *See* docket nos. 11 & 11-1.  Plaintiffs' submission seeks leave to file the proposed pleading and, if the Court denies their request, seeks additional time to "respond more fully" to Defendants' Motion to Dismiss.  *See* docket no. 11, p. 7.  Contrary to Plaintiffs' description of their proposed pleading, however, the First Amended Complaint does not "clarif[y] the existing claims."  *Id.*, p. 3.  In fact, the proposed pleading does not add a single factual allegation related to Plaintiffs' claims for unpaid wages that was not included in the original Complaint.[2]  Like the original Complaint, the proposed First Amended Complaint contends that Defendants wrongfully failed to pay Plaintiffs and those allegedly similarly situated to them for all hours they worked, including pre- and post-shift work time.  *See* docket no. 11-1, ¶¶ 3, 32, 34-35, 44, 55, 68, 75.

The proposed First Amended Complaint further asserts that Defendants wrongfully failed to provide certain health benefits – but, unlike the original Complaint, the proposed pleading limits this claim to a proposed sub-class of non-unionized employees.  *See id.*, ¶¶ 6, 17, 40-41, 53, 75.  The proposed First Amended Complaint also modifies the original Complaint in that it

---

[2] A textual comparison of the original Complaint and the proposed First Amended Complaint is attached as Exhibit 4.

seeks to add six current and former SJ employees as named plaintiffs, one of whom (Borys Perez) Plaintiffs claim never was a member of the union.  *See id.*, ¶¶ 10-15.  In addition, the proposed pleading abandons the common law claims asserted in Plaintiffs' original Complaint for breach of contract, *quantum meruit*, and unjust enrichment.  *See* Exhibit 4.

## ARGUMENT

### I.  THE RULE 15(A)(2) STANDARD FOR MOTIONS TO AMEND

Under the Rule that Plaintiffs invoke, "a court has the discretion to deny [a motion to amend] if it believes that, as a matter of law, amendment would be futile.'"  *Weiss v. United States*, 2008 WL 4595373, at *4 (D. Mass. Sept. 30, 2008) (Woodlock, J.) (quoting *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 792 (1st Cir. 1995)); *see also Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006) ("When a proffered amendment . . . would be an exercise in futility, or otherwise would serve no useful purpose, the district court need not allow it").  Where, as here, leave to amend is sought before discovery is complete and neither party has moved for summary judgment, "futility" is gauged by the criteria of Rule 12(b)(6).  *See Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006); *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *see also Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir. 2009) ("[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend.") (internal quotations omitted).

In light of the pleading standard articulated in *Twombly*, 550 U.S. at 570 and its progeny, a motion for leave to amend a complaint should be denied as futile if it does not state a *plausible* claim for relief.  To meet this plausibility standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  Moreover, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and thus legal conclusions couched as factual allegations are to be given no credence.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 (a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do") (internal quotations omitted).

In assessing futility, a court should analyze whether the proposed amendment cures any defects that have been identified in prior versions of the moving party's pleading.  Where a proposed amendment fails to rectify the fundamental flaws an earlier complaint, leave to amend should be denied.  *See, e.g.*, *Menard v. CSX Transp.*, 840 F. Supp. 2d 421, 427-29 (D. Mass. 2012) (denying leave to amend where proposed amended complaint suffered from the same flaws as the original complaint because the amendment would be futile); *see also Edlow v. RBW, LLC*, 688 F.3d 26, 40 (1st Cir. 2012) ("Although the amended complaint does elaborate on the factual context of several of the counts, the proposed amendments are futile because they do not rectify [plaintiff's] claims' fundamental flaws and thus save them from dismissal . . . .").

## II. PLAINTIFFS' CROSS MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE THEIR PROPOSED FIRST AMENDED COMPLAINT IS FUTILE.

Plaintiffs' motion for leave to amend should be denied because their proposed First Amended Complaint is futile, as it fails to cure the fundamental defects of the claims in Plaintiffs' original Complaint.  The claims that Plaintiffs assert on behalf of unionized employees remain completely preempted by federal labor law, and the claims that Plaintiffs now seek to assert on behalf of non-unionized employees fail to state any claim upon which relief can be granted.

**A.**    **Plaintiffs' Claims on Behalf of Unionized Employees Remain Preempted by Section 301 of the Labor Management Relations Act.**

Like the each of the claims in the original Complaint, the Wage Act claims that Plaintiffs seek to asserted on behalf of unionized employees in the proposed First Amended Complaint are preempted by federal labor law.   There is no dispute that the original Plaintiffs Reyes and Martinez, along with new putative plaintiffs Ramon Brea, Hector Diaz, Jose Luis Galdames, Hugo Laureano and Elmer Pineda, are members of a bargaining unit whose terms and conditions of employment are governed by a CBA between SJ and the Service Employees International Union Local 615 ("SEIU Local 615").[3]   *See* docket no. 11-1, ¶¶ 8-14; docket no. 10-1, Affidavit of David Shea, 9/21/2012, ¶¶ 3-7, Exs. 1-4.   Likewise, there is no dispute that these unionized employees are subject to a CBA that contains detailed provisions governing wage schedules, overtime pay, holiday pay, vacation pay, sick pay, bereavement pay, pay for employees serving jury duty, pay for travel time and travel expenses, pay for employees who transfer from one job classification, wage category and/or benefits eligibility category to another, and work schedules, changes in assignments, and workloads.

With very few exceptions, state law plays no role in resolving disputes arising out of unionized, private employment settings.   Comprehensive federal statutes dominate the labor law landscape.   As an example, Section 301 of the LMRA, 29 U.S.C. § 185(a), gives federal courts

---

[3] The CBA between SEIU Local 615 and SJ is attached as Exhibit 4 to docket no. 10-1, the Affidavit of David Shea, 9/21/2012, ¶ 7.   Citations to the specific sections of the CBA implicated by Plaintiffs' claims in this matter are included in footnotes 5 through 14, *infra*.   The CBA is properly before the Court in this opposition to Plaintiffs' Cross-Motion to Amend, as the motion requires the Court to analyze subject matter jurisdiction.   *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (court may consider evidence extrinsic to pleadings in determining subject-matter jurisdiction); *see also Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (when "a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

jurisdiction to resolve disputes arising out of contracts reached by unions and employers in the collective bargaining process after any private dispute resolution mechanism between the parties has run its course.  Indeed, where the resolution of a state law claim substantially depends on an analysis of the terms of a CBA, that claim must be brought, if at all, under Section 301.  A state law claim requiring interpretation of a CBA that asserts any cause of action other than a contract claim under Section 301 is preempted and must be dismissed.[4]  *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 559-61 (1968); *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997) (Section 301 preempts claim "if its resolution arguably hinges upon an interpretation of the collective bargaining agreement") (internal citations omitted).

Because the unionized employees' Wage Act claims in the proposed First Amended Complaint depend on an interpretation and application of the CBA between SJ and SEIU Local 615, those claims cannot survive.  Notably, these state law statutory wage claims require an interpretation of the CBA to determine how these employees should be paid for the hours that they allegedly worked under the various provisions governing pay in the CBA.  Plaintiffs acknowledge that the "principal question here for the broader [unionized] group of Plaintiffs remains then the number of hours worked and the hourly wage."  *See* docket no. 11, p. 5.

---

[4] The preemption doctrine was developed to avoid differing interpretations of the parties' rights and obligations.  *See Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962).  As the Supreme Court explained in *Lingle v. Norge Div. of Magic Chef, Inc.*:

> If the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute.

486 U.S. 399, 405-06 (1988).  Indeed, "[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts."  *Caterpillar*, 482 U.S. at 394.

Plaintiffs' argument that resolution of these questions requires "no reference to the CBA," *see id.*, however, is flat wrong.

As noted above, the CBA between SJ and SEIU Local 615 contain numerous, overlapping provisions governing what counts as an hour "worked" and the amount employees should be paid for each of those hours.  Indeed, the rate at which SJ employees are paid is governed by a welter of CBA provisions dealing with wage schedules (that vary based on geographic location and type of work),[5] overtime pay,[6] holiday pay,[7] vacation pay,[8] sick pay,[9] bereavement pay,[10] pay for employees serving jury duty,[11] pay for travel time and travel expenses,[12] and pay for employees who transfer from one job classification, wage category and/or benefits eligibility category to another.[13]  In some circumstances, the CBA requires SJ to pay employees for hours that were not actually "worked," such as those hours spent serving jury duty or hours spent on bereavement leave.[14]  Thus, contrary to Plaintiffs' assertions, the number

---

[5] *See* CBA, Art. 7, Sections 7.1-7.2.

[6] *See id.*, Art. 8, Section 8.1.

[7] *See id.*, Art. 9, Sections 9.1-9.8.

[8] *See id.*, Art. 10, Sections 10.1-10.5.

[9] *See id.*, Art. 11, Section 11.1.

[10] *See id.*, Art. 12, Section 12.1.

[11] *See id.*, Art. 14, Sections 14.1-14.2.

[12] *See id.*, Art. 17, Sections 17.1.-17.2.

[13] *See id.*, Art. 26, Sections 26.1-26.2.

[14] *See id.*, Art. 12, Section 12.1 ("In the event of a death in the employee's immediate family (i.e., father, mother, sister, brother, child, spouse/spousal equivalent), the employee shall be entitled to the next three (3) succeeding days off and shall be reimbursed for any time lost from his/her regular schedule as a result of such absence"); Art. 14, Section 14.1 ("Any employee who is required to report for jury service on the day and during the hours which he is scheduled to

of hours worked is not a matter "governed directly by Massachusetts statute and regulations," and the Court is not in a position to "only look at the pay stubs of the individual employees" to determine the hourly rate paid to unionized employees.  *See* docket no. 11, pp. 5-6.

To calculate both the number of hours each plaintiff worked and the applicable rate of pay for each of those hours, the Court would have to analyze the provisions of the CBA governing employee wages and pay.[15]  As the First Circuit described such analysis in *Adames v. Exec. Airlines, Inc.*, "[s]uch analysis . . . is interpretation," not mere consultation or "minimal reference" to the CBA, as Plaintiffs claim.[16]  258 F.3d 7, 13 (1st Cir. 2001) (internal quotations omitted).  In *Adames*, a flight attendant argued that her employer violated Puerto Rico wage and hour law because it did not pay her for all hours worked.  The First Circuit held that her claims were preempted by the Railway Labor Act[17] because it was impossible to determine whether she was paid for all hours worked without <u>interpreting</u> the collective bargaining agreement at issue. The court would first need to interpret the agreement to determine how many hours the employee "worked," and then determine both base and hourly pay in order to adjudicate any damages.  *Id.* at 13.  Courts have applied the same reasoning to dismiss Massachusetts statutory wage claims as

work shall be paid the difference between the amount received for jury service and the amount he would have earned working his regularly scheduled day at his straight time rate).

[15] A more detailed explication of the analysis of the CBA necessary to adjudicate Plaintiffs' Wage Act claims is included in Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint.  *See* docket no. 10, pp. 6-9.

[16] The fact that the union plaintiffs' complaints about their compensation and hours of work is properly a matter to be resolved through the grievance and arbitration process established in the CBA is further demonstrated by the fact that named Plaintiff Reyes actually filed a grievance with the union pursuant to the CBA claiming that she had been paid for fewer hours than she had worked – the very claims she and her fellow Plaintiffs now seek to assert in the instant action. *See* Affidavit of David Shea, 10/19/2012, ¶¶ 3-5, Ex. 1 (attached as Exhibit 5).

[17] Although *Adames* was decided under the Railway Labor Act, the same analysis applies to preemption under Section 301 of the LMRA.  *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263 (1994); *Adames*, 258 F.3d at 12, n.3.

preempted.  *See Arnstein v. MVM, Inc.*, 2012 WL 4863043, at \*3 (D. Mass. 2012) (claim under Mass. Gen. Laws ch. 149, § 148 preempted by § 301); *Mitchell v. Globe Newspaper Co., Inc.*, 602 F. Supp. 2d 258, 261-62 (D. Mass. 2009) (claim under Mass. Gen. Laws ch. 149, § 148 preempted by § 301); *see also Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 7-8 (1st Cir. 2012) (affirming exercise of federal jurisdiction over wage claims under Mass. Gen. Laws ch. 149, § 148 because of preemption under Section 301) (citing *Adames*, 258 F.3d at 13).

Remarkably, Plaintiffs fail even to mention *Adames*, the seminal case governing Section 301 in this judicial circuit, in their Cross Motion for Leave to Amend, much less do they provide any explanation as to how their proposed amendment yields a different result than their original Complaint under *Adames*.  Because Plaintiffs' proposed First Amended Complaint fails to cure the fundamental flaws in the original Complaint that Defendants identified in their Motion to Dismiss, the Court should deny Plaintiffs' Cross Motion For Leave to Amend.

      **B.**      **The Claims that Plaintiffs Seek to Assert on Behalf of Non-Unionized Employees Would Not Survive a Motion to Dismiss.**

Unlike the original Complaint, the proposed First Amended Complaint contains a second and distinct cause of action under the Wage Act on behalf of putative plaintiff Perez and a proposed sub-class of non-unionized employees seeking (1) unpaid health insurance benefits; and (2) unpaid wages.  *See* Exhibit 4, pp. 7-10.  Because Plaintiffs provide no factual allegations to lend plausibility to their theory that Defendants breached their statutory obligations to SJ's non-unionized employees, the First Amended Complaint fails to state a claim upon which relief could be granted.  This is a second respect in which the proposed amendment is futile and further grounds to deny Plaintiffs Cross Motion for Leave to Amend.

> **1.** **Claims For Health Benefits Asserted on Behalf of Non-Unionized Employees are Futile Because Non-Unionized Employees are Entitled to No Such Benefits Under the Law.**

The proposed First Amended Complaint alleges that "Defendants failed to pay . . . benefits in the form of health insurance, owed to Plaintiff Perez and the Non-Union Sub-Class Members . . . in violation of the [Wage Act]." *See* docket no. 11-1, ¶ 75. This claim is subject to dismissal because Plaintiffs have failed to offer any allegations to even suggest that SJ's non-unionized employees have a legal entitlement to health benefits. *See, e.g.*, *Twombly*, 550 U.S. at 555 (to state a viable claim, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."). Indeed, the only allegation in the proposed First Amended Complaint even related to this issue – "Plaintiff Perez asserts that he also was supposed to receive benefits in the form of health insurance," docket no. 11-1, ¶ 40 – is a legal conclusion, which is not entitled to any presumption of truth under the applicable pleading standards. *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555.

Perez's conclusory assertion that he was "supposed to" receive health benefits is unsupported by any substantive factual allegations. Perez does not and cannot allege that he was "supposed to" participate in the union health insurance plan because it applies only to members of SEIU Local 615. *See, e.g.*, CBA, p. 1, Art. 3, Sections 3.1-3.2, Art. 15, Sections 15.1-15.3. Moreover, none of Plaintiffs' factual allegations gives rise to any inference that there was some other plan that they were entitled to join, much less that Defendants precluded them from joining any such plan.

Even if Plaintiffs had provided some factual predicate for their conclusory assertion that Perez was "supposed to" receive health benefits, he would still have no viable claim under the statute that Plaintiffs invoke. The Wage Act was designed "to prevent the unreasonable detention of <u>wages</u>," *Bos. Police Patrolmen's Ass'n v. City of Bos.*, 435 Mass. 718, 720 (2002)

(emphasis added), and there is no authority suggesting that health benefits constitute "wages" within the meaning of the Wage Act. In *Roche v. Morgan Collection*, *Inc.*, the District of Massachusetts recently dismissed an employee's Wage Act claim seeking reimbursement of health insurance costs, finding that such health care benefits do not constitute "wages" within the meaning of the statute.  -- F. Supp. 2d --, 2012 WL 3151250, at *9 (D. Mass. 2012) ("The SJC in no way indicated that such health care benefits are considered 'wages' for purposes of section 148 [of the Wage Act] or that [a] plaintiff . . . would have been entitled to such costs pursuant to a claim under the Wage Act."); *see also Sterling Research, Inc. v. Pietrobono*, 2005 WL 3116758, at *13 (D. Mass. 2005) (reimbursement for medical insurance premiums due to an employee under an employment contract does not fall within the purview of the Wage Act).[18]

---

[18] Even if the Wage Act did allow for the recovery of health benefits and Plaintiffs had provided a sufficient factual basis for their claims, the claims still would be subject to dismissal, as they would be preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA contains "expansive pre-emption provisions," which preempt state law claims that "relate to" employee benefit plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); 29 U.S.C. § 1144(a); *see also Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96-97 (1983) (a law "relates to" an employee benefit plan if "it has a connection with or reference to such a plan."). In short, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. Section 502(a)(1)(B) of ERISA creates a cause of action for wrongful denial of benefits under an employee benefit plan. *See id.* (citing 29 U.S.C. § 1132(a)(1)(B)). Thus, Plaintiffs' claim for wrongful denial of health benefits is preempted because ERISA provides the exclusive remedy for such claims. *See Humphrey v. Paul Revere Life Ins. Co.*, 2012 WL 928432, at *2 (D. Mass. 2012) ("ERISA preempts state remedies 'for what is in essence a plan administrator's refusal to pay allegedly promised benefits.'") (quoting *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 51 (1st Cir. 2000)); *e.g.*, *Turner v. Fallon Cmty. Health Plan*, 127 F.3d 196, 198-99 (1st Cir. 1997) (state law claim that plan beneficiary was denied rights and benefits due under plan preempted by ERISA because, *inter alia*, ERISA provides its own remedy to secure benefits); *Andrews-Clarke v. Lucent Techs., Inc.*, 157 F. Supp. 2d 93, 105 (D. Mass. 2001) (state law claims were preempted by ERISA because "ERISA [] provides an exclusive remedy for wrongful denial of benefit claims"); *see also Humphrey*, 2012 WL 928432, at *2 (breach of contract claim preempted by ERISA because it alleged that the defendant refused to pay promised benefits under an employee benefit plan – the same conduct that would underlie an ERISA claim); *Williams v. HealthAlliance Hosps.*, 135 F. Supp. 2d. 106, 111 (D. Mass. 2001) (because plaintiff's claims

Plaintiffs' claims for health benefits on behalf of non-union employees have no factual foundation and are contrary to the established law. Plaintiffs' proposal to amend their pleading to add such claims is a futile squandering of resources, and the Court should deny Plaintiffs' Cross Motion For Leave to Amend.

### 2. Plaintiffs' Factual Allegations Fail to State a Plausible Claim for Unpaid Wages on Behalf of Non-Union Employees.

Plaintiffs' claim that Defendants failed to pay all wages due to non-unionized employees suffers from a similar defect as their claim for health benefits. To succeed on a claim under the Wage Act, Plaintiffs must show that Defendants failed to pay non-unionized employees for all hours worked. Plaintiffs, however, plead their wage claim in only the most general and conclusory terms, merely stating that "Defendants suffered or permitted Plaintiffs to perform work off the clock" and repeating the conclusory assertion that Defendants failed to pay all wages earned by SJ's non-unionized employees. *See, e.g.*, docket no. 11-1, ¶¶ 32, 55, 75. The proposed First Amended Complaint does not contain a single factual allegation regarding any employee's rate of pay or working schedule, any basis to conclude that any activities performed were compensable, the nature or approximate amount of work allegedly performed off the clock, how often this occurred, which employees allegedly worked off the clock, or any other specific fact capable of converting Plaintiffs' conclusions to a plausible claim for relief.

Courts applying the *Twombly* motion to dismiss standard in the analogous context of Fair Labor Standards Act ("FLSA") cases have held that to substantiate violations of the statute, a complaint must "at least approximately[] allege the hours worked for which . . . wages were not received," because "simply stating that a plaintiff was not paid for overtime work does not

---

sought to enforce his rights under an employee benefit plan, his claims were barred by ERISA Section 502(a)).

sufficiently allege a violation" of wage and hour laws.  *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628, 630 (S.D.N.Y. 2007) (quotations omitted).  For example, an employee cannot establish a minimum wage violation simply by alleging that he was not paid at his regular rate of pay for a number of hours.  Rather, he must allege facts that if proven would demonstrate that as a result of that unpaid time, his effective rate of pay during some period dropped below the statutory minimum.  *See, e.g.*, *Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir. 2012) (affirming dismissal of federal minimum wage claims, as plaintiffs "described a mechanism by which the FLSA *may have been violated* . . . . [but] [did] not provide examples (let alone estimates as to the amounts) of such unpaid for time . . . or describe the nature of the work performed during those times," which was significant because plaintiffs "could still have been properly compensated under the FLSA: in particular, various forms of 'work' may not be compensable"); *Bailey v. Border Foods Inc.*, 2009 WL 3248305, at *2 (D. Minn. 2009) (granting motion to dismiss federal minimum wage claims, as plaintiffs "failed to identify their hourly pay rates . . . or any facts that would permit the Court to infer that Plaintiffs actually received less than minimum wage").  Plaintiffs' suggestion that all non-unionized SJ employees performed some unspecified activities for an unstated amount of time for which they were not paid fails to meet the *Twombly* standard and requires dismissal.[19]

---

[19] This analysis applies with equal force to the wage claims asserted by and on behalf of unionized employees in the proposed First Amended Complaint.  However, because Defendants' arguments in favor of Section 301 preemption are plainly dispositive of those claims, Defendants have presented this analysis in relation to the claims asserted on behalf of the non-unionized employees.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Cross Motion For Leave to Amend the Complaint, grant Defendants' Motion to Dismiss in its entirety, and dismiss the original Complaint with prejudice.

Respectfully submitted,
SJ SERVICES INC., SHAWN SHEA and DAVID SHEA

By their attorneys,

  /s/ Barry J. Miller
Richard L. Alfred (BBO #015000)
 ralfred@seyfarth.com
Barry J. Miller (BBO #661596)
 bmiller@seyfarth.com
Jessica M. Schauer (BBO #669677)
 jmschauer@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Dated:  October 19, 2012              (617) 946-4800

---

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2012, this document was filed through the Court's ECF system and that Plaintiffs' counsel includes registered users designated to receive Notices of Electronic Filings in this matter.

          /s/ Barry J. Miller
              Barry J. Miller

---