UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VILMA REYES, PATRICIA MARTINEZ, RAMON BREA and BORYS PEREZ, on behalf of themselves and all other employees similarly situated,<br><br>                  Plaintiffs,<br><br>        v.<br><br>S.J. SERVICES, INC., SHAWN SHEA and DAVID SHEA,<br><br>                  Defendants. | Civil Action No.: 12-cv-11715-DPW |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### Introduction

On March 27, 2013, the parties in the above referenced matter appeared before this Court at a hearing on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion to Dismiss"). At this hearing, the Court took the Motion to Dismiss under advisement and instructed the parties to engage in a brief 90-day discovery period relating to the arguments advanced in Defendants' Motion to Dismiss. The Court then instructed the Plaintiffs to file a Motion for Summary Judgment on those arguments at the conclusion of the brief discovery period.

Accordingly, the following is Plaintiff's Motion for Partial Summary Judgment that: (1) the Federal Labor Management Relations Act (the "LMRA") does not pre-empt Plaintiffs' state law claims for unpaid wages for those Plaintiffs who are part of the collective bargaining unit;

and (2) the separate claims concerning health insurance for those Plaintiffs who are non-bargaining unit members, Ramon Brea and Borys Perez, are covered by the Massachusetts Wage Act and not pre-empted by ERISA.  Additionally, with no genuine disputes of facts as to liability in connection with Defendants' failures on Counts I, II and III, Plaintiffs further request that this Court enter summary judgment as to liability on those Counts and schedule an additional brief discovery period on the topic of damages.

First, it is the Plaintiffs' position that the LMRA does not pre-empt all state law protections merely because a collective bargaining agreement exists.  Rather, the LMRA only prohibits causes of action under state law where a Court needs to interpret the collective bargaining agreement for purposes of determining liability under that state law.

Here, without once referring to a collective bargaining agreement, the Plaintiffs have presented this Court with evidence (1) of the specific hourly rates paid to each Plaintiff in each and every week s/he worked; (2) that each Plaintiff worked time for which s/he was not paid, ie. off-the-clock; and (3) that Defendants "knew or should have known" that Plaintiffs were working time without pay.

While Defendants may argue that some of the underlying facts are disputed, such as the amount of off-the-clock-time worked, there can be no dispute that all of this evidence is presented without requiring interpretation of a collective bargaining agreement, or in this case, even reference to such an agreement.  Thus, it is clear that this Court should hold that the LMRA does not pre-empt Plaintiffs' state law claims.  In addition, as there now is no genuine dispute that Plaintiffs worked hours without pay and that Defendants knew or should have known of such efforts, this Court should enter judgment as to liability on Count I of the Complaint for non-payment of wages to those Plaintiffs, Reyes and Martinez, who are members

of the collective bargaining unit, and on Count II of the Complaint for non-payment of wages to those Plaintiffs, Brea and Perez, who are non-bargaining unit members.

Second, Plaintiffs Brea and Perez request that this Court rule that their additional claims concerning non-payment of health insurance are covered by the Massachusetts Wage Act. Here, too, there can be no genuine dispute that neither employee received payment of their health insurance benefits until well after those benefits became due and after the Amended Complaint concerning those claims was filed.[1] Those benefits amounted to payment by the company of $138 per week, or half of the premium, for coverage provided by Neighborhood Health. It is Plaintiffs Brea and Perez's position that these additional claims are protected by the Wage Act as unpaid "benefits," and are not pre-empted by ERISA. Nevertheless, as part of Plaintiff Brea and Perez's claims under Count III for non-payment of the health insurance benefits, they have included an alternative claim under ERISA in the event of such pre-emption.

Accordingly, Plaintiffs' Motion for Partial Summary Judgment should be granted, and the Court should enter an ORDER that:

> A. Plaintiffs' claims for unpaid wages are not pre-empted by the Labor Management Relations Act.
>
> B. Plaintiffs Ramon Brea's and Borys Perez's claims for unpaid health insurance benefits are protected by the Massachusetts Wage Act, and those claims are not pre-empted by Employee Retirement Income Security Act.
>
> C. Partial Summary Judgment shall enter in favor of Plaintiffs on liability under Counts I, II and III, and this Court shall schedule further proceedings to determine the amount of damages due to Plaintiffs.

---

[1] The Amended Complaint adding claims for Mr. Brea and Mr. Perez for non-payment of benefits was filed with the Court on January 11, 2013. See Docket No. 25. Yet, the enrollment decision forms for both are dated February 2013.

**Statement of Undisputed Facts**

Plaintiffs rely on their statement of undisputed material facts (submitted herewith), but provide the following brief summary for the Court's convenience.

As an initial matter, it is clear that Defendants knew or should have known that Plaintiffs were working off-the-clock. As to Ramon Brea, he worked cleaning the train shelters on the MBTA's B, C and E lines.[2] Defendants' managers testified that this consisted of cleaning 39 platforms each day and disposing of the trash.[3] Defendants' payroll indicates that Mr. Brea was regularly paid 29 hours per week. Yet, Defendants' managers have also testified that it would take 15-20 minutes to clean each platform and adjacent tracks;[4] between 5-25 minutes to travel by truck between each platform, a matter performed in personal vehicles with parking allowed only at metered spaces;[5] some time to travel between the end and beginning of each line; and 15-20 minutes to drive seven miles to the dump at the close of the shift.[6] Merely cleaning the shelters alone, using the lowest number of shelters conceded by anyone at 36, in the quickest amount of time testified to by Defendants' managers at 15 minutes, would require 540 minutes (36 x 15), or 9 hours each day. Without accounting for travel time between the shelters or time to dump the collected trash, or that Friday was only a 5-hour scheduled day for Mr. Brea, one can conclude that Defendants certainly knew that the working hours should exceed 6 per day, or 30 hours per week, in a substantial manner. Yet, Defendants routinely paid Mr. Brea for only 29 hours each week.

---

[2] Plaintiffs' Statement of Undisputed Facts (PSUF), paragraph 32.

[3] PSUF, par. 32.

[4] PSUF, par. 32.

[5] PSUF, par. 33.

[6] PSUF, par. 34.

As to Ms. Reyes and Ms. Martinez, they worked on the same shifts and in the same garages, and as such we deal with them together here. Defendants knew that Ms. Reyes and Ms. Martinez were expected to clean 6 buses per shift when they worked at the Albany Street garage, and that it took approximately 1.5 to 2 hours per bus to clean those smaller buses.[7] Further, Defendants knew that both were expected to clean a minimum of 3-4 buses when they worked at the Southampton garage, and that it took approximately 2 hours per bus to clean those larger buses.[8] Defendants also knew Ms. Reyes and Ms. Martinez had to collect cleaning supplies at the start of their shift and put them away at the close of her shift.[9] Merely cleaning the buses alone, using the lowest number of buses testified to by Defendants' managers in each garage, in the quickest amount of time testified to by Defendants' managers, would require more than 6 hours of work time each day. Without accounting for any other work, one can conclude again that Defendants certainly knew that the working hours should exceed 6 per day, or 30 hours per week. Yet, Defendants routinely paid Ms. Reyes for only 29-30 hours each week and Ms. Martinez for only 30 hours each week.

As for Mr. Perez, Defendants knew that he was expected to clean between 40 and 50 buses per shift when he worked the weekend shift and that it took approximately 5 to 10 minutes to perform those light-cleaning tasks, after taking between 10-20 minutes to gather cleaning supplies at the beginning of his shift and before taking 20 to 30 minutes at the conclusion of the shift to replace his supplies.[10] Using the average number of buses testified to by Defendants' managers, in the average amount of time testified to by Defendants' managers,

---

[7] PSUF, par. 25 and 30.

[8] PSUF, par. 25 and 30.

[9] PSUF, par. 27.

[10] PSUF, par. 39.

along with time to obtain and replace cleaning supplies, and assuming he performed no other cleaning duties, the work would require more than 6 hours each day.  Taken together with the testimony for the other workers, and one can conclude here, too, that Defendants certainly knew or should have known that the working hours should exceed 6 per day.  Yet, Defendants routinely paid Mr. Perez for only 30 hours each week.

Despite this knowledge, Defendants declined to provide sign-in/sign-out sheets for cleaners to track their time; time clocks for cleaners to record their time; or any other written or electronic means for cleaners to track or record their time.[11]  Yet, the cleaners have provided substantial testimony regarding the time required to perform their work over and above the time that was actually paid.

As for the rate to be applied to those hours, Defendant David Shea (President of SJ Services, Inc.) clearly stated that one need only look at the paychecks to determine the hourly rate for every week.  For example, in connection with the pay rates for Ms. Reyes, Mr. Shea answered the following question:

> Q.  Okay, and if I want to know then what her hourly pay rate was during any week that she worked, I'd look in the column that says rate, is that right?
>
> A.  Yes.[12]

He further agreed that the pay rates for the remaining individuals would be determined in the same manner.[13]

---

[11] PSUF, par. 40.

[12] PSUF, par. 5; Deposition of David Shea, p. 70:7-10.

[13] PSUF, par. 5; Deposition of David Shea, p. 70:20-71:2.

As for the claims to health insurance, Mr. Brea first became eligible to be paid health insurance benefits on July 2010, but certainly no later than November 2011. Likewise, Mr. Perez first became eligible for those payments in July 2012. Defendants admit that they required managers to keep documentation of health insurance enrollment decisions for at least the last couple of years. Yet, the only record Defendants produced concerning either Mr. Brea's or Mr. Perez's determinations regarding health insurance occurred in February 2012, after the amended complaint was filed in this matter. Those health insurance payments would have amounted to no less than $138 per week for each individual.

## Argument

**I.     Standard of Review**

"A movant is entitled to summary judgment when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *W. Mass. Elec. Co. v. IBEW*, 2012 U.S. Dist. LEXIS 139068, at *3 (D. Mass. Sept. 27, 2012), citing Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party,' and '[a] fact is material if it has the potential of determining the outcome of the litigation.'" *Id.*, citing *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011). "However, 'conclusory allegations, improbable inferences, and unsupported speculation' are insufficient to create a genuine issue of material fact to survive summary judgment." *Id.*, citing *Sullivan v. City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009).

As set forth in this Motion, it is clear that the material facts are undisputed with respect to issues of preemption and liability on Counts I, II and III. For this reason, Plaintiff asks this Court to grant Plaintiffs' Motion for Partial Summary Judgment in full.

**II.     Plaintiffs' claims under the Massachusetts Wage Act on behalf of unionized employees are not preempted by section 301 of the Labor Management Relations Act.**

Massachusetts state law requires employers to pay its hourly employees their regular wages for all hours worked.  This is not an overtime or minimum wage standard, but rather a regular wage standard.  *See, e.g.,* Massachusetts Wage Act, M.G.L. c. 149, §§ 148 and 150; *Crocker v. Townsend Oil Co.*, 464 Mass. 1, 7 (2012) ("an employee whose claim for unpaid overtime is barred by the two-year statute of limitations may nevertheless assert a claim for unpaid wages under the Wage Act.  However, in such instance, recovery is limited to uncompensated time worked at the *regular rate*." (emphasis added)); *Somers v. Converged Access, Inc.*, 454 Mass. 582, 594 (2009) ("damages incurred" under the Wage Act "will include any wages and benefits the plaintiff proves he was denied because of his misclassification as an independent contractor, including the holiday pay, vacation pay, and other benefits that he would have been entitled to as a CAI employee"); *Souto v. Soveriegn Realty Assocs.*, 23 Mass. L. Rep. 386, *6 (Mass. Super. 2007) ("Massachusetts courts have recognized regular wages at the employee's *regular rate* for time worked in excess of his normal hours are 'wages' nonetheless for purposes of G.L. c. 149, §148." (emphasis added)); *Mogilevsky v. Bally Total Fitness Corp.*, 263 F. Supp. 2d 164, 169-70 (D. Mass. 2003) (in ruling on working time not covered by the overtime statute, "the Court rules that Mogilevsky is entitled to recover only at the *standard rate* -- not the overtime rate -- for any hours for which he received no compensation whatsoever.  For those hours in which he was compensated at the standard rate rather than the overtime rate, he is not entitled to the difference." (emphasis added)).

This is a fundamental right to be paid wages that is independent of the collective bargaining agreement, and it is an important public policy.  *See also*, M.G.L., c. 149, §148

(providing that "[n]o person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty."). And, §301 of the Labor Management Relations Act, "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Lavidas v. Bradshaw*, 512 U.S. 107, 123 (1994).

The Plaintiffs here seek enforcement of those same rights – regular wages for hours worked – but despite the language of the Labor Management Relations Act and the case law interpreting it, Defendants claim that the LMRA pre-empts that fundamental Massachusetts right. They do so by arguing that determining the regular wage rate here would require more than just looking at the pay checks of the affected employees and more than a mere reference to a collective bargaining agreement to read the wage rates, despite the testimony of their own President. Instead, Defendants urge this Court to find that it would be required to interpret the collective bargaining agreement in order to determine a regular wage rate.

Yet, even if this Court agreed with Defendants' position today that looking at the payroll records is insufficient, Defendants have still failed to meet their burden. Courts including those in this Circuit, have been clear that referencing a collective bargaining agreement to determine damages, as opposed to liability, does not render the matter pre-empted under the LMRA. *See Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001) ("'Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state claim, not otherwise pre-empted, would stand,'" quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988)); *Lingle*, at 413 n.12 ("A collective bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state suit is entitled.")

In short, the Defendants seek to render meaningless their own President's sworn testimony, and failing that they seek to invalidate the Supreme Court's set distinction between permissible "reference to" the collective bargaining agreement for purposes of determining wage rates and the impermissible effort of "interpreting" the collective bargaining agreement to determine employee rights.

Yet, the question before this Court is not whether the employer paid wages properly in accordance with the provisions of the collective bargaining agreement – as the contract terms are not in dispute – but rather whether the payments were made in accordance with Massachusetts law.

As is plain here, determining Plaintiffs' claims requires no interpretation of the governing collective bargaining agreement. In fact, it requires no reference either. Plaintiffs worked hours for which they were not paid. That is the basic and fundamental claim governed by Massachusetts law. Were payrolls or paystubs unavailable, the Court may at most need to read the agreement to view the applicable rates. The Court could perform this referencing in the first instance, or in a separate hearing to determine damages. But payroll is available here, and the rates are undisputed. Thus, the Complaint should not be dismissed on the grounds that it is pre-empted by the LMRA in light of Defendants urgings that interpretation will be required, and the Court should enter summary judgment in favor of Plaintiffs on that issue.

Of course, Defendants may not use the LMRA to dismiss claims of those individuals who are not members of the collective bargaining unit. Thus, summary judgment should enter as to liability on Counts I and II, as set forth below.

**III.    This Court should enter summary judgment as to liability on all Plaintiffs' claims under the Massachusetts Wage Act for non-payment of wages for off-the-clock work, with further hearing on damages.**

As has been set forth in the statement of facts, Defendants' have testified that they knew that the cleaning work they required Plaintiffs to complete each day would take longer than the scheduled shift time,[14] and Plaintiffs have testified that the work actually did take longer than those scheduled shifts. Yet, the payroll records indicate that Defendants regularly paid Plaintiffs only for the scheduled time. In such situations, Defendants are liable for non-payment of wages for the off-the-clock work, and summary judgment on liability should enter.

As just reiterated by the Supreme Judicial Court of Massachusetts,

> "The purpose of the Wage Act is 'to prevent the unreasonable detention of wages.'" *Melia v. Zenhire, Inc.*, 462 Mass. 164, 170 (2012)**,** quoting *Boston Police Patrolmen's Ass'n v. Boston*, 435 Mass. 718, 720, 761 N.E.2d 479 (2002). *See American Mut. Liab. Ins. Co. v. Commissioner of Labor & Indus.*, 340 Mass. 144, 147, 163 N.E.2d 19 (1959). The Wage Act "was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages." *Melia v. Zenhire, Inc.*, supra**,** quoting *Cumpata v. Blue Cross Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000). When the Wage Act was first enacted in 1886, its application "was initially limited to employees of a 'manufacturing, mining or quarrying, mercantile, railroad, street railway, telegraph, telephone and municipal corporation and every incorporated express company and water company.'" *Melia v. Zenhire, Inc.*, supra at 171 & n.6**,** quoting St. 1886 c. 87, § 1. Since that time, the "Legislature has broadened the scope of employees covered, the type of eligible compensation, and the remedies available to employees whose rights have been violated" (footnotes omitted). *Id*. at 171.

*Lipsitt v. Plaud*, 466 Mass. 240 (August 12, 2013).

While Defendants may have introduced evidence regarding the actual number of hours worked by Plaintiffs which might be sufficient to create a question of fact on that matter, such

---

[14] *See, e.g., Brennan v. Qwest Communs. Int'l, Inc.,* 727 F. Supp. 2d 751, 758 (D. Minn. 2010) (noting that defendant "itself estimated" that plaintiffs' daily assigned workload would require as much as 10 or 11 hours).

11

evidence goes to damages and not liability. And, on that matter, it is the employer's responsibility to maintain records. As set forth again by the Supreme Judicial Court,

> Employers are required to keep, for two years, records concerning their employees' working hours and payment of wages, and the Attorney General is entitled to access to these records. G. L. c. 151, § 15. The Attorney General has the authority to demand access to any documents that bear on a question of wages. G. L. c. 151, § 3. Moreover, any employer who fails to keep the requisite records is subject to a civil citation or order pursuant to the weekly wage law. G. L. c. 151, § 19. These requirements create a presumption that the records are relevant to disputes over wages brought either by the Attorney General or by private parties. *See* G. L. c. 149, §§ 27C, 148, 150. These duties apply to the defendants.

*Wiedmann v. Bradford Group, Inc.*, 444 Mass. 698, 704 (Mass. 2005).

*See also*, 29 C.F.R §785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."); *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 363 (2d Cir. 2011) (finding that the duty under the FLSA "to maintain accurate records of its employees' hours is non-delegable," and that "[o]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours."); *Hertz v. Woodbury County Iowa*, 566 F.3d 775, 781 (8th Cir. 2009) (finding that knowledge may be actual or constructive).[15]

Where an employer fails to keep such records and then alleges that an employee's estimation of hours and wages are inaccurate,

---

[15] While Plaintiff avers that the Massachusetts Wage Act provides more protection than the FLSA, reference to the rules and regulations under the FLSA has proved useful to analysis of violations under the Wage Act, and given the admissions by Defendants here, no such further protections are necessary. *See, e.g., Mullally v. Waste Mgmt. of Mass.*, 452 Mass. 526, 531 (2008), citing *Swift v. AutoZone, Inc.*, 441 Mass. 443, 447 (2004), quoting *Valerio v. Putnam Assocs. Inc*., 173 F.3d 35, 40 (1st Cir. 1999).

> [t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of . . . the [FLSA]. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.
>
> *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), *superseded by statute on other grounds as recognized in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293, 150 U.S. App. D.C. 198 (D.C. Cir. 1972).

Thus, where the employer failed to keep accurate records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson,* 328 U.S. at 687; *Secretary of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991) (noting that the burden established in *Anderson* "has well withstood the passage of time"); *Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17, n.9 (D.Mass. 2012) ("As the Supreme Court made clear in *Anderson v. Mt. Clemens Pottery*, this lack of records encumbers the employer, not the employee,").

The employee's "burden need only be satisfied by a preponderance of the evidence and employee's own testimony is sufficient to meet this burden." *Porcal v. Ciuffo*, 2013 U.S. Dist. LEXIS 108079, *9 (D.Mass. August 1, 2013), citing *Anderson* at 686-87. That burden "is not high," such "that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 362 (2d Cir. 2011); *Estes v. Pineland Farms, Inc.*, 2012 U.S. Dist. LEXIS 76309, *3 (D.Me. January 13, 2012), citing *Anderson* at 687 (noting that Plaintiff might meet burden "with direct evidence or circumstantial evidence capable of supporting a just and reasonable inference"; finding that jury's calculation of unpaid wages properly based upon approximation); *Santilan v. Henao*, 822 F. Supp. 2d 284,

13

294 (E.D.N.Y. 2011) ("a plaintiff can meet this burden 'by relying on recollection alone.'" (citations omitted)).  Once an employee satisfies his burden, the employer may rebut with "evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson,* 328 U.S. at 687-88.

Where, as here, the employer was on notice of off-the-clock work and nevertheless maintained no records of time the employees actually worked – let alone evidence of the "precise amount of work performed" throughout the entire time period as required by *Anderson* – those employees are entitled to summary judgment as to liability.  Plaintiffs have alleged sufficiently that they worked significant off-the-clock hours.  There now remains only a question of fact as to the number of hours for purposes of calculating damages.

**IV.    The health benefits promised by the Defendants are not preempted under ERISA given that the promise by the Defendants does not implicate the administration of an Employee Benefit Plan.**

Plaintiffs assert that Defendants' conduct violates the Wage Act.  Only in the alternative do the Plaintiffs plead a cause of action under ERISA. The Federal Rules of Civil Procedure permit pleading in the alternative.[16]  Here, Plaintiffs plead ERISA causes of action if it turns out that Defendants did create an ERISA governed health plan but did not disclose its existence to the Plaintiffs.  Nevertheless, Plaintiffs have a valid claim for these benefits under the Wage Act, as it provides recovery for "any damages incurred, and for any lost wages and other benefits." M.G.L. c. 149, § 150.

---

[16] "Fed. R. Civ. P. 8(d).... permits Plaintiffs to plead alternative and even inconsistent legal theories… even if Plaintiffs only can recover under one of these theories." *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 295 (D. Mass. 2009), citing *Limone v. U.S.*, 579 F.3d 79, 2009 WL 2621536, at *11 (1st Cir. 2009)

14

Defendants use too broad a brush to contend that the common law and Wage Act claims are related to an ERISA plan. Relatedness is not an endless concept as the Defendants suggest. The Supreme Court explains that:

> …the starting presumption that Congress does *not* intend to supplant state law. Indeed, in [the preemption context] ... *where federal law is said to bar state action in fields of traditional state regulation* we have worked on the "assumption that the historic police powers of the States *were not to be superseded* by the Federal Act *unless* that was the *clear and manifest purpose* of Congress".

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654-55 (1995) (internal citations omitted) (emphasis added).

Here, Plaintiffs have demonstrated that Defendants did not deal truthfully with Plaintiffs regarding promised benefits exchanged for their labors, in failing to provide those benefits at all until February 2013. As a consequence, the Wage Act claims cannot fall under the ERISA rubric, and summary judgment must be granted.

### A. **ERISA is not a shield to protect an employer that engages in a scheme to deprive employees of the fruits of their employment contracts.**

ERISA was not intended to require employers to provide any set of benefits to employees. It is not reasonable to conclude that Congress enacted ERISA so an employer could deceive an employee about the terms of his employment, and then escape liability by hiding under the ERISA shield of limited liability. A purpose of the ERISA statute is to,

> ...control the administration of benefit plans, as by imposing reporting and disclosure mandates, participation and vesting requirements, funding standards, and fiduciary responsibilities for plan administrators. It envisions administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme. It also pre-empts some state law. (internal statutory references omitted)

*Travelers,* 514 U.S. at 650-51; *see also, Massachusetts v. Morash*, 490 U.S. 107, 112 (1989) ("ERISA was passed by Congress ... to safeguard *employees* from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." (emphasis added)).

While ERISA is designed to preempt state and local laws that relate to employee benefits, the scope of that pre-emption does not extend to the promises made here.  Divining whether a law is preempted under ERISA is not easy.  *See Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 793 (1st Cir.1995) ("Courts have struggled over whether ERISA preempts claims of misrepresentation regarding the scope or existence of benefits, and 'there is ample, well reasoned authority which would support either position,'" quoting *Pace v. Signal Technology Corp.*, 417 Mass. 154 (1994)).  Although Carlo is a starting point in the First Circuit analysis, it was written prior to the Supreme Court's decision in *Travelers* which narrowed the scope of ERISA preemption.  Moreover, cases following *Carlo* demonstrate the narrowing sweep of ERISA.  In *Travelers*, the Supreme Court pointed-out that the type of state laws that Congress sought to preempt are those that mandate employee benefit structures of their administration; alternative enforcement mechanisms; and those laws that regulate the internal workings of benefit plans. *Travelers*, 514 U.S. at 654-55.  Moreover,

> State laws that have merely a "tenuous, remote, or peripheral connection with a covered benefit plan" may not be preempted by ERISA. *Rosario-Cordero v. Crowley Towing & Transp. Co.,* 46 F.3d at 123 (citation and internal quotation marks omitted).  Such is normally the case with respect to laws of general applicability.

*Boston Children's Heart Found., Inc. v. Nadal-Ginard*, 73 F.3d 429, 439 (1st Cir. 1996).

In *Nadal-Ginard*, the First Circuit held that a breach of fiduciary duty arising under Massachusetts law was not preempted under ERISA. *Id.* at 440.  The Court continued,

16

> [t]he legal determination that Nadal-Ginard's conduct constitutes a fiduciary breach does not require the resolution of any dispute about the interpretation or administration of the plan. Further, the application of state law in this instance does not raise the core concern underlying ERISA preemption. Indeed, the fact that Nadal-Ginard chose an ERISA plan rather than some other form of compensation is peripheral to the underlying claim that Nadal-Ginard breached his corporate responsibilities.

*Id.*

Here, too, the Plaintiffs have demonstrated that Defendants' promise of health benefits is not based upon some failure under the terms of an ERISA plan – where the scope of the lawsuit would be between the employee and the plan administrator relating to the terms of the plan – but rather a failure in its entirety between the employer and the employee, as no such benefits were provided at all.  Likewise, the existence of an ERISA plan is not essential to the operation of the Wage Act.  The present case is unlike Judge Stearns' decision in *Altshuler v. Animal Hospitals, Ltd.*, because in that case the employee admitted that a disputed employee benefit, an IRA contribution, was part of an ERISA employee benefit plan.  *Altshuler v. Animal Hospitals, Ltd.*, 2012 U.S. Dist. LEXIS 155941, *7 (D. Mass. Oct. 31, 2012).  Thus, the alleged promises made by Defendants to Plaintiffs are not pre-empted by ERISA.

**B.     The Wage Act applies to health benefits.**

The Wage Act, M.G.L. c. 149, § 150, provides:

> An employee claiming to be aggrieved by a violation of sections 33E, 148, 148A, 148B, 150C, 152, 152A or 159C or section 19 of chapter 151 may, 90 days after the filing of a complaint with the attorney general, or sooner if the attorney general assents in writing, and within 3 years after the violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and ***for any lost wages and other benefits***. An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any ***lost wages and other benefits*** and shall also be awarded

17

> the costs of the litigation and reasonable attorneys' fees.
> (emphasis added)

Recently, the Courts in Massachusetts have been asked to reexamine what the statute means when it uses the term wages. In 2005, in *Wiedmann v. Bradford Group, Inc.,* 444 Mass. 698, 703-04, 831 N.E.2d 304 (2005), "the Supreme Judicial Court overruled *Savage* and authorized a more expansive interpretation of the Wage Act." *Juergens v. MicroGroup Inc.*, 28 Mass. L. Rep. 133, *5 (Curran, J.; Mass. Super. Ct. 2011); *see also, Somers v. Converged Access, Inc.*, 454 Mass. 582, 594 (2009) ("damages incurred" under the Wage Act "will include any wages and benefits the plaintiff proves he was denied because of his misclassification as an independent contractor, including the holiday pay, vacation pay, and other benefits that he would have been entitled to as a CAI employee"; those other benefits included "vacation pay, holiday pay, and employer contributions for employee health insurance plans, dental insurance plans, and life insurance plans.").

Furthermore, in *Jancey v. School Commission of Everett,* 421 Mass. 482, 490-93 (1995), the Supreme Judicial Court determined that in the context of G.L. c. 149, the definition of wage includes, "[e]very form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, tips, and other similar advantage received from the individual's employer or directly with respect to work for him…Term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to manner in which such compensation is computed." *Jancey*, at 490-493.

As health benefits are a form of remuneration payable to employees for personal service, they should be considered a wage and thus covered by the Wage Act. Furthermore, the enforcement provision of the Wage Act, M.G.L. c. 149, § 150, clearly provides for the recovery

18

of health benefits as it states, "[a]n employee claiming to be aggrieved by a violation of sections 33E, 148, 148A, 148B, 150C, 152, 152A or 159C or section 19 of chapter 151 may…institute and prosecute in his own name and on his own behalf…a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits."

In their Motion to Dismiss submitted prior to this Motion for Summary Judgment, Defendants rely on *Roche v. Morgan Collection, Inc*., 2012 U.S. Dist. LEXIS 107331, 24-28 (D. Mass. Aug. 1, 2012). The Plaintiffs do not dispute that the Court in *Roche* states that health care benefits are not considered wages for purposes of section 148 of the Wage Act. Instead, Plaintiffs point out that this decision was based on the theory that "the Wage Act is to be 'construed narrowly.'" *Id*. In fact in *Roche*, the Plaintiff did not "dispute that section 148 of the Wage Act excludes health insurance costs." *Id*.

In the case at bar the Plaintiffs are actively disputing that section 148 of the Wage Act excludes health insurance costs. It is clear that the Court in *Weidmann* construed the wage act broadly. Taken together with the language of the Act itself referencing benefits, it is clear that health benefits should be considered a wage subject to the protections of the Wage Act. Accordingly, Plaintiffs' have adequately established a claim under the Massachusetts Wage Act.

### Conclusion

For the reasons stated herein, Plaintiffs request that this Court enter an ORDER that:

A. Plaintiffs' claims for unpaid wages are not pre-empted by the Labor Management Relations Act.

B. Plaintiffs Ramon Brea's and Borys Perez's claims for unpaid health insurance benefits are protected by the Massachusetts Wage Act, and those claims are not pre-empted by Employee Retirement Income Security Act.

C. Partial Summary Judgment shall enter in favor of Plaintiffs on liability under Counts I, II and III, and this Court shall schedule further proceedings to determine the amount of damages due to Plaintiffs.

Respectfully submitted,

/s/ Philip J. Gordon
Philip J. Gordon (BBO #630989)
Kristen M. Hurley (BBO #658237)
GORDON LAW GROUP, LLP
585 Boylston Street
Boston, MA 02116
617-536-1800
pgordon@gordonllp.com

**Certificate of Service**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, on September 3, 2013.

/s/ Philip J. Gordon
Philip J. Gordon